UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,
an individual,

       Plaintiff,

v.

E-COVER ME, INC.,
a Missouri corporation, d/b/a
SENIOR BENEFITS LIFE INSURANCE;

ROYAL NEIGHBORS OF AMERICA,
an Illinois fraternal insurer;

JASON ROBERT WILLIAMS,
an individual;

ROSS OWEN GRIFFON,
an individual; and,

HOWARD TODD JENDLIN,
an individual,

       Defendants.

CASE NO.: _____
HON.:_____

Removed from Washtenaw
County Circuit Court
Case No.: 21-001297-NZ
Hon: Patrick J. Conlin, Jr.

**NOTICE OF REMOVAL**

---

Mark W. Dobronski
*Pro se*
PO Box 85547
Westland, Michigan 48185
(734) 330-9671
markdobronski@yahoo.com

Mark S. Demorest (P35912)
Derek R. Mullins (P81422)
DEMOREST LAW FIRM, PLLC
Attorneys for Defendant Royal
322 W. Lincoln Ave.
Royal Oak, MI 48067
(248) 723-5500
mark@demolaw.com
derek@demolaw.com

## **NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§1331, 1441, and 1446, Defendant Royal Neighbors of America ("Royal Neighbors"), hereby gives notice of removal of the above-captioned matter (Civil Action No. 21-001297-NZ), from the Circuit Court of Washtenaw County, State of Michigan, where it is now pending, to this Court by filing this Notice of Removal. As grounds for this removal, Royal Neighbors shows the Court as follows:

1.     On or about November 23, 2021, Plaintiff Mark Dobronski ("Dobronski") brought an action in the Circuit Court of Washtenaw County, Michigan, styled *Mark W. Dobronski v. E-Cover Me, Inc., d/b/a Senior Benefits Life Insurance et al.*, Circuit Court of Washtenaw County, Case No. 21-001297-NZ (the "State Court Action").

2.     A true and correct copy of all process, pleadings, and Orders received by Royal Neighbors in the State Court Action is attached hereto and incorporated as **EXHIBIT A**.

3.     As more fully set forth below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

4.     In his Complaint, Dobronski alleges—in four of the six counts—violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C.

§227 *et. seq.* This Court has subject jurisdiction in this case pursuant to 28 U.S.C. §1331 because Dobronski alleges claims under the TCPA.

5.     Dobronski's claims alleging violations of the TCPA, 47 U.S.C. §227 *et. seq.*, are removable because a federal question has been raised by Dobronski's Complaint. 28 U.S.C. §§ 1331, 1441, 1446; *see also Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012) (holding that TCPA cases are removable to Federal Court).

6.     The United States District Court for the Eastern District of Michigan, Southern Division, is the proper forum for removal because it maintains jurisdiction over the County of Washtenaw, where Dobronski filed his complaint. 28 U.S.C. §1446(a).

7.     Venue is proper in this district and division because a substantial part of the events giving rise to Dobronski's claims allegedly occurred in this district and division. 28 U.S.C. §1391(b)(2). Therefore, this case is properly removed to the United States District Court for the Eastern District of Michigan, Southern Division.

8.     This Notice of Removal is timely filed within 30 days after receipt by Royal Neighbors of the Summons and Complaint, and pursuant to 28 U.S.C. §1446(b).

9.     Pursuant to 28 U.S.C. §1446(d), this Notice of Removal is being served on Dobronski and filed with the Clerk of the Washtenaw County Circuit Court.

10.     The other Defendants have confirmed that they consent to removal of the case to Federal Court.

11.     Royal Neighbors reserves the right to amend or supplement this Notice of Removal as appropriate.

12.     In accordance with 28 U.S.C. §1446(a), Royal Neighbors certifies that this Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.  In addition, as set forth above, copies of all pleadings, process and other papers filed in the State Court Action are attached as **EXHIBIT A**.  *See* 28 U.S.C. §1446(a).

**WHEREFORE**, because this Court has jurisdiction pursuant to 28 U.S.C. §1331, based on federal question jurisdiction, removal pursuant to 28 U.S.C. §1441 is appropriate.

**DEMOREST LAW FIRM, PLLC**

By: */s/  Mark S. Demorest*
Mark S. Demorest (P35912)
Derek R. Mullins (P81422)
Attorneys for Defendant
322 W. Lincoln Ave.
Royal Oak, MI 48067
(248) 723-5500
mark@demolaw.com
derek@demolaw.com

Dated:  January 4, 2021

Royal Neighbors of America/Dobronski Lawsuit (1441)/1 Draft Pleadings/2021 12 20 Notice of Removal.docx

- 4 -

# EXHIBIT A

Approved, SCAO

RECEIVED IN
Original - Court   LEGAL DEPT   DEC 0 9 2021
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | SUMMONS | CASE NO. |
|---|---|---|---|
| 22nd | JUDICIAL DISTRICT | | 21-001297-NZ |
| | JUDICIAL CIRCUIT | | |
| | COUNTY PROBATE | | JUDGE PATRICK J. |

Court address
101 EAST HURON STREET    ANN ARBOR, MICHIGAN 48104-1446

CONLIN, JR.    Court telephone no.
(734) 222-3001

Plaintiff's name(s), address(es), and telephone no(s).
MARK W. DOBRONSKI    TEL: (734) 330-9671
PO BOX 85547
WESTLAND, MI  48185-0547

v

Defendant's name(s), address(es), and telephone no(s).
E-COVER ME, INC.
d/b/a SENIOR BENEFITS LIFE INSURANCE;

ROYAL NEIGHBORS OF AMERICA;

JASON ROBERT WILLIAMS;

ROSS OWEN GRIFFON; and,

HOWARD TODD JENDLIN

*** See Summons, Page 2 for Addresses and Tel Nos. ***

Plaintiff's attorney, bar no., address, and telephone no.
PRO SE

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in  ☐ this court,  ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action  ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk* /s/ Kim Plumb |
|---|---|---|
| | 02-22-2022 | November 23, 2021 |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (9/19)  **SUMMONS**    MCR 1:109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL DISTRICT

MARK W. DOBRONSKI,

Case No.    21-001297-NZ

          Plaintiff,

JUDGE PATRICK J. CONLIN, JR.

v.

E-COVER ME, INC. d/b/a
SENIOR BENEFITS LIFE INSURANCE,

ROYAL NEIGHBORS OF AMERICA,

JASON ROBERT WILLIAMS,

ROSS OWEN GRIFFON, and

HOWARD TODD JENDLIN,

          Defendants.

---

## SUMMONS
(Page 2)

Defendant # 1:
E-COVER ME, INC.
d/b/a SENIOR BENEFITS LIFE INSURANCE
500 NORTHWEST PLAZA DR STE 701
SAINT ANN, MO 63074-2222

Defendant #2:
ROYAL NEIGHBORS OF AMERICA
230 16TH ST
ROCK ISLAND, IL 61201-8608

Defendant #4:
ROSS OWEN GRIFFON
2907 OLD HANLEY RD
SAINT LOUIS, MO 63114-4631

Defendant #3:
JASON ROBERT WILLIAMS
2678 MIDLAND RIDGE DR
SAINT LOUIS, MI 63114-1233

Defendant #5:
HOWARD TODD JENDLIN
17050 EMILE ST APT 1
BOCA RATON, FL 33487-1051

FILED IN Washtenaw County Trial Court; 11/23/2021 1:41 PM

## STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL DISTRICT

**MARK W. DOBRONSKI,**
an individual,

                    Plaintiff,

v.

**E-COVER ME, INC.,**
a Missouri corporation, d/b/a
**SENIOR BENEFITS LIFE INSURANCE;**

**ROYAL NEIGHBORS OF AMERICA,**
an Illinois fraternal insurer;

**JASON ROBERT WILLIAMS,**
an individual;

**ROSS OWEN GRIFFON,**
an individual; and,

**HOWARD TODD JENDLIN,**
an individual,

                    Defendants.

Case No. 21-001297-NZ    -NZ

JUDGE PATRICK J. CONLIN, JR.

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

---

## **COMPLAINT**

    NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*,

1

and for his complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

## Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a place of business and residence in Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant E-COVER ME, INC. ("ECMI") is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business being located at 500 Northwest Plaza, Suite 701, Saint Ann, Missouri 63074, and transacts business under the fictitious name of SENIOR BENEFITS LIFE INSURANCE.

4. Upon information and belief, Defendant ROYAL NEIGHBORS OF AMERICA ("RNA") is a fraternal insurer organized and existing under the laws of the State of Illinois, with a principal office located at 230 16th Street, Rock Island, Illinois 61201-8608.

5. Upon information and belief, Defendant JASON ROBERT WILLIAMS ("Williams") is an individual, is 42 years old, is mentally competent, is not in the military service, resides at 2678 Midland Ridge Drive, Saint Louis, Missouri 63114-1233, is President of Defendant EMCI, and personally orchestrated, directed, and participated in the tortious

acts alleged herein.

6. Upon information and belief, Defendant ROSS OWEN GRIFFON ("Griffon") is an individual, is 54 years old, is mentally competent, is not in the military service, resides at 2907 Old Hanley Road, Saint Louis, Missouri 63114-4631, is vice president of Defendant EMCI, and personally orchestrated, directed, and participated in the tortious acts alleged herein.

7. Upon information and belief, Defendant HOWARD TODD JENDLIN ("Jendlin") is an individual, is 66 years old, is mentally competent, is not in the military service, resides at 17050 Emile Street, Apartment 1, Boca Raton, Florida 33487-1051, is an employee or agent of Defendant EMCI, and personally participated in the tortious acts alleged herein.

## Jurisdiction and Venue

8. This Court has jurisdiction over the subject matter of this complaint pursuant to 47 U.S.C. § 227(b)(3), 47 U.S.C. § 227 (c)(5), and M.C.L. § 600.605.

9. Venue is proper in this Court, pursuant to M.C.L. § 600.1629(1)(b)(i), as the tortious or illegal telephone calls complained of herein were received in this judicial circuit.

10. This Court has limited personal jurisdiction over Defendants ECMI and RNA pursuant to M.C.L. § 600.715 as a result of the defendants transacting any business within the state; doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

11. Additionally, Defendants RNA and ECMI are licensed, pursuant to M.C.L. §

3

500.402, as an insurance producers by the State of Michigan, Department of Insurance and

Financial Services, to sell, solicit or negotiate insurance in the state and by doing so have

submitted to the jurisdiction of the state.

12.  This Court has limited personal jurisdiction over Defendants Williams, Griffon,

and Jendlin pursuant to M.C.L. § 600.705 as a result of the defendants transacting any

business within the state; doing or causing any act to be done, or consequences to occur, in

the state resulting in an action for tort; and/or contracting to insure any person, property, or

risk located within this state at the time of contracting.

13.  Additionally, Defendants Williams and Griffon are licensed, pursuant to M.C.L.

§ 500.1201a, as insurance agents by the State of Michigan, Department of Insurance and

Financial Services, to sell, solicit or negotiate insurance in the state and by doing so have

submitted to the jurisdiction of the state.

14.  Upon information and belief, Defendant Jendlin is not licensed by the State of

Michigan, Department of Insurance and Financial Services to sell, solicit or negotiate

insurance in the state, although Defendant Jendlin made representations to Plaintiff that he

was licensed by the State of Michigan as an insurance agent.

<u>General Allegations</u>

15.  In response to widespread public outrage over intrusive telemarketing calls to

homes and businesses, the United States Congress acted to prevent entities, like Defendant,

from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting

the TCPA.

4

16.  According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

17.  Congress explicitly found that robo-calling is an invasion of privacy.

18.  In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...."  See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

19.  In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

20.  The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1)  Prohibitions  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— ...

(B) to initiate any telephone call to any residential telephone line

5

using an artificial or prerecorded voice to deliver a message
without the prior express consent of the called party, unless the
call is initiated for emergency purposes, is made solely pursuant
to the collection of a debt owed to or guaranteed by the United
States, or is exempted by rule or order by the Commission under
paragraph (2)(B)...."

21.  Pursuant to authority delegated by Congress to the FCC under the TCPA at 47

U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

22.  The TCPA regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(d) No person or entity shall initiate any call for telemarketing
purposes to a residential telephone subscriber unless such person
or entity has instituted procedures for maintaining a list of
persons who request not to receive telemarketing calls made by
or on behalf of that person or entity. The procedures instituted
must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for
telemarketing purposes must have a written policy, available
upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel
engaged in any aspect of telemarketing must be informed and
trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or
entity making a call for telemarketing purposes (or on whose
behalf such a call is made) receives a request from a residential
telephone subscriber not to receive calls from that person or
entity, the person or entity must record the request and place the
subscriber's name, if provided, and telephone number on the
do-not-call list at the time the request is made. Persons or
entities making calls for telemarketing purposes (or on whose
behalf such calls are made) must honor a residential subscriber's
do-not-call request within a reasonable time from the date such
request is made. This period may not exceed thirty days from the
date of such request. If such requests are recorded or maintained
by a party other than the person or entity on whose behalf the

6

telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

23. The TCPA regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer.** It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during**

7

**regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

24. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

25. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

8

"No person or entity shall initiate any telephone solicitation to:...

"(2) A **residential telephone subscriber who** has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

26.   Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), as it relates to telephone numbers appearing of the do-not-call list, provides for a private right of action, as follows:

"Private right of action.  A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation.

(B) an action to recover for actual monetary loss from such a violation. or to receive up to $500 in damages **for each such violation**, whichever is greater, or

(C)  both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

27.  The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

9

"A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do [] the following: ...

"(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

"(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

"(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

28. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

"... A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

29. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made..."

30. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

" (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

10

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

31. Plaintiff's residential telephone number is 734-XXX-1212.

32. Plaintiff's residential telephone number 734-XXX-1212 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004 and at all times relevant hereto.

33. By listing his residential telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

34. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan.**" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

11

35. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

36. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

37. At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

38. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

39. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

40. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

12

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

41.   When considering individual corporate officer liability, other Courts have agreed

that a corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S.

Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that

corporate actors can be individually liable for violating the TCPA where they had direct,

personal participating in or personally authorized the conduct found to have violated the

statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408,

415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid

individual liability, the TCPA would lose much of its force.").

42.   It is well settled under Michigan law that corporate employees and officials are

personally liable for all tortious and criminal acts in which they participate, regardless of

whether they are acting on their own behalf or on behalf of a corporation.  A corporate

officer or director is, in general, personally liable for all torts which he authorizes or directs

or in which he participates, notwithstanding that he acted as an agent for the corporation and

not on his own behalf.

43.   Here, upon information and belief, Defendants Williams, Griffon, and Jendlin

directed, designed, participated in, and authorized the telemarketing contact.

44.   Defendants Williams, Griffon, and Jendlin had personal control over the

telephone solicitation activities of co-defendant ECMI, including the ability to cease the

telephone solicitation activity.

45. Defendant RNA was aware that Defendants ECMI and its officers, employees, and agents were engaging in illegal telemarketing solicitations marketing RNA's insurance products, provided support to Defendant RNA in the form of access to RNA's computer systems and products, but took no action to curtail or stop the illegal telemarketing activities and ratified the illegal conduct by accepting the business which ECMI and its officers, agents, and employees brought to RNA.

46. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

47. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

48. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

14

49. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

50. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

51. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

### Allegations Specific to this Complaint

52. Defendants ECMI, Williams, Griffon, and Jendlin are engaged in the business of, *inter alia*, selling life insurance for and on behalf of, *inter alia*, co-defendant RNA.

53. Upon information and belief, as part of its marketing practices, Defendant ECMI engages the services of third-party telemarketers, sometimes termed "lead generators" or "ropers", who are located in the Asian continent to take advantage of the very low wages

15

paid in those nations and in an attempt to skirt state and federal telemarketing laws in the United States, to make automated telephone calls *en masse* to consumers to develop sales leads of prospects for life insurance for Defendant ECMI's employees or agents to solicit.

54.   The third-party telemarketer qualifying a prospect will utilize an automated telephone dialing system to dial telephone numbers *en masse*. When a consumer answers one of the prospecting telephone calls, there is a delay of 3-5 seconds from the time that the consumer answers the telephone call before a "boink" sound is heard and then a live person comes onto the line to pre-qualify the consumer.  This is characteristic of an automated telephone dialing system.

55.   A common characteristic of the incoming calls is that the caller identification number is "spoofed" (i.e., falsified) to display non-working or invalid telephone number to conceal the identity of the calling telemarketer.  This is an additional characteristic of an automated telephone dialing system being utilized.

56.   Another common characteristic of the incoming calls is that the telemarketer usually speaks English as a second language in an Asian dialect and with poor grammar, will identify himself or herself as being with the generic name "Senior Benefits."  If Plaintiff attempts to question the caller for better identification, the caller will suddenly hang up.

57. Often times, during the qualification process, apparently when Plaintiff has failed to meet unspecified qualification criteria, the telemarketer will suddenly, and without warning, hang up.

58.  On those occasions where when Plaintiff has informed the caller to do not call

16

again, the caller will often utter profanities and hang up; yet the unsolicited and unwelcome telephone calls to Plaintiff continue.

59. In order to attempt to better identify the sources of the illegal calls, Plaintiff will engage the calling telemarketer and provide unique false identification information during each telephone call, an investigative technique known as a "canary trap." Thus, when there is occasion where a follow-up call is made to Plaintiff and the unique false identification information is supplied by the telemarketer, Plaintiff is able to tie the calls together.

60. Upon the third-party telemarketer qualifying a prospect, the call information is then either warm transferred or forwarded to ECMI as a "pre-qualified lead" for a licensed insurance agent to then make a sales presentation to the pre-qualified consumer. It is only at this stage that the true identify of ECMI is disclosed to the called consumer.

### Terminated Calls

61. On the following dates and times, Plaintiff received unwelcome telephone solicitations from Asian-dialect telemarketers who identified themselves as being with "Senior Benefits" and who attempted to pre-qualify Plaintiff for final expense (death benefit) insurance, but during the call Plaintiff apparently failed pre-qualification and the caller suddenly hung up:

| Date / Time | Caller ID | Identified As |
|---|---|---|
| 07/28/2020 @ 5:13 PM | 734-359-3926 | Mike, Senior Benefits |
| 08/06/2021 @ 5:50 PM | 734-483-8114 | John, Senior Benefits |
| 08/30/2021 @ 11:03 AM | 813-946-7792 | John, Senior Benefits |
| 09/09/2021 @ 3:45 PM | 772-562-6301 | Mark, Senior Benefits |
| 09/14/2021 @ 10:15 AM | 734-469-1268 | Jack, Senior Benefits |
| 09/20/2021 @ 11:36 AM | 813-725-9590 | Mike, Senior Benefits |

| 09/21/2021 @ 4:47 PM | 734-467-7190 | Mike, Senior Benefits |
| 09/27/2021 @ 12:48 PM | 208-844-6297 | Allison, Senior Benefits |
| 09/28/2021 @ 4:36 PM | 517-258-8474 | Alex, Senior Benefits |
| 10/19/2021 @ 2:11 PM | 734-441-1562 | Kate, Senior Benefits |

62. On each of the above calls, upon Plaintiff answering the call by stating "hello", Plaintiff would observe a 4-5 second delay, and then a "boink" sound, before the live telemarketer would come on the line. This is a common characteristic of an automated telephone dialing system being utilized.

63. On each of the above calls, the caller identification number was either a disconnected or invalid telephone number and cannot be used to call back the caller to make a "do not call" demand. This is a common characteristic of calls made using an automatic telephone dialing system.

64. Plaintiff has received additional unsolicited and unwelcome calls from "Senior Benefits" which have not been logged, but the dates and times of which are known to Defendants, and upon discovery of these additional calls, Plaintiff will amend this Complaint to seek statutory damages for each of said calls.

### Call Number 1

65. On September 2, 2021 at approximately 2:05 P.M., Plaintiff's residential telephone number (734-xxx-1212) rang.

66. The caller identification displayed was 269-257-5231.

67. Upon Plaintiff answering the telephone, there was a 4-5 second delay after Plaintiff said "hello" after which a "boink" sound was heard and then a live person identified himself as "Steve with Senior Benefits."

18

68. "Steve" then pre-qualified Plaintiff for life insurance during which interview process Plaintiff provided unique controlled identifying information, an investigative technique known as a "canary trap".[1] Amongst the controlled information, Plaintiff gave the name of "Kevin Rodammer", age 67, and favorite hobby of horseback riding.

69. "Steve" then stated that "tomorrow or the day after tomorrow", a licensed agent would be calling Plaintiff back, and then "Steve" suddenly hung up.

70. Immediately after the call terminated, Plaintiff dialed the telephone number appearing in the caller identification (269-257-5231) and received a reorder or fast busy .

### Call Number 2

71. On November 2, 2021 at approximately 12:36 P.M., Plaintiff's residential telephone number (734-xxx-1212) rang.

72. The caller identification displayed was 734-371-7327.

73. Upon Plaintiff answering the telephone, there was a 4-5 second delay after Plaintiff said "hello" before a live person came on the line and stated "Hi Kevin, my name is Howard. How are you today? Recently you spoke with someone about a state-regulated final expense program that has recently been approved in Michigan. When you spoke to him you stated that your favorite hobby was horse riding. Do you remember the call?"

74. In order to better identify the source of the call, Plaintiff feigned recollection of

---

[1] The objective of the "canary trap" is to provide unique controlled identifying information, and if and when that information reappears, the source of that information is able to be determined.

19

the call and interest.

75.  Plaintiff was able to learn the identity of the caller as being Howard Jendlin, a "senior benefits advocate" located in Saint Louis, Missouri.

76.  Jendlin asked detailed medical and personal questions of Plaintiff.  Plaintiff gave controlled identifying information to Jendlin, including the name "Kevin Lasater"[2], a date of birth of April 15, 1955, age 67, and an e-mail address of kevintheman@memopad.us .[3]

77.  Jendlin then attempted to sell Plaintiff a life insurance policy with Defendant RNA.

78.  Toward the end of the call, Defendant Griffon was added in to assist with the verification process.  Griffon was identified as the Vice President of Defendant ECMI. During the call, Plaintiff inquired of Griffon regarding the Asian-dialect individual that had called Plaintiff previously.  Griffon stated that Defendant ECMI uses call centers located in Pakistan, India, and the Phillipines because "due to regulations call center are out of the [USA] so they can get around some of the regulations."

79.  Immediately after the telephone call terminated, Plaintiff dialed the telephone number displayed in the caller identification (734-371-7327) and received a recorded

---

[2] Unfortunately, due to the two-month delay between the call on September 2, 2021 and the call on November 2, 2021, Plaintiff was unable to – on-the-spot – recall the "canary trap" information provided during the earlier call.  Jendlin did not volunteer the bogus surname utilized during the earlier call, was somewhat confused when Plaintiff used the surname "Lasater", but nonetheless continued with the telephone solicitation.

[3] E-mail address was not requested during the September 2, 2021 telephone solicitation.

message stating "Thank you for calling Senior Benefits Life Insurance, a subsidiary of E-Coverme."

80.   On November 2, 2021, at 1:31 P.M., Plaintiff received an email from RNA addressed to the e-mail address provided to Jendlin during the telephone call approximately one hour prior, which e-mail provided life insurance disclosures.

Post Investigation

81.   Subsequent to the November 2, 2021 call, Plaintiff telephoned Defendant ECMI and was connected to an individual who identified himself as Jason Williams, President of ECMI.  Williams answered the call by asking "Is this Kevin Rodammer or Kevin Laster?".  During this call, Defendant Williams admitted that Defendant ECMI uses Asian call centers to dial consumers *en masse* to facilitate their sales of life insurance products.

COUNT I
VIOLATION OF THE TCPA - CALL ABANDONMENT

82.   Plaintiff incorporates the allegations of paragraphs 1 through 81, *supra.*

83.   Each of the ten (10) Terminated Calls. Cal Number 1, and Call Number 2, *supra,* were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i), as the call was not connected to a live sales represented within two (2) seconds of the called person's completed greeting.

84.   The aforesaid violations of the TCPA were wilful and/or knowing.

COUNT II
VIOLATION OF THE TCPA - FAILURE TO IDENTIFY

85.   Plaintiff incorporates the allegations of paragraphs 1 through 84, *supra.*

21

86. Each of the ten (10) Terminated Calls and Call Number 1, *supra,* were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as the name of the person or entity on whose behalf the call was being made, and a telephone number or address at which the person or entity may be contacted, were not provided.

87. The Defendants deliberately used a generic name of "Senior Benefits" to conceal the true identity of the party responsible for initiating the call, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT III
## VIOLATION OF THE TCPA - DO NOT CALL

88. Plaintiff incorporates the allegations of paragraphs 1 through 87, *supra.*

89. Each of the ten (10) Terminated Calls, Call Number 1, and Call Number 2, *supra,* were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants's agent initiated a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to received telephone solicitations that is maintained by the Federal Government.

90. Defendants knew that Plaintiff's residential telephone number was on the National Do Not Call Registry, yet initiated calls clandestinely, using spoofed caller identification, thus evidencing that the violation was wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - INVALID CALLER ID

91. Plaintiff incorporates the allegations of paragraphs 1 through 90, *supra.*

92. Each of the ten (10) Terminated Calls and Call Number 1, *supra,* were in

22

violation of the TCPA, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants or Defendants' agent failed to provide caller identification information displaying a  telephone number which would permit any individual to make a do-not-call request during regular business hours.

93.  The Defendants had to take deliberate and overt action to manipulate the caller identification information to provide false information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT V
## VIOLATION OF THE MTCCCA

94.  Plaintiff incorporates the allegations of paragraphs 1 through 93, *supra.*

95.  Each of the ten (10) Terminated Calls and Call Number 1, *supra,* were in violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendants or Defendants' agent used a telephone line to attempt to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VI
## VIOLATION OF THE MHSSA

96.  Plaintiff incorporates the allegations of paragraphs 1 through 95, *supra.*

97.  Each of the ten (10) Terminated Calls and Call Number 1, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; M.C.L. § 445.111b(1), and/or

Defendants or Defendants' agent did not at the beginning of the telephone solicitation state his or her name and the full name of the organization on whose behalf the call was initiated and provide a telephone number of the organization on request.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.     1.   As to Count I: Damages in the amount of $500.00 for the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $18,000.00.

2.   As to Count II: Damages in the amount of $500.00 for the 11 TCPA violations alleged, for damages of $5,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $16,500.00.

3.   As to Count III: Damages in the amount of $500.00 for the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled because the violation was wilful or knowing; for total damages of $18,000.00.

4.   As to Count IV: Damages in the amount of $500.00 for the 11 TCPA violations alleged, for damages of $5,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $16,500.00.

5.   As to Count V: Damages in the amount of $1,000.00 for the 11 MTCCCA violations alleged, for damages of $11,000.00.

6.   As to Count VI: Damages in the amount of $250.00 for each of the 11

24

MHSSA violations alleged, for damages of $2,750.00.

The cumulative total amount of damages claimed in this action is $82,750.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's cellular telephone line.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: November 23, 2021

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

25

**VERIFICATION**

State of Michigan           )
                            ) ss;
County of Washentaw         )


MARK W. DOBRONSKI, being first duly sworn, does depose at state, as follows:

1. I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

2. I have read the Complaint in the foregoing matter, and I know the contents thereof. The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

3. If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

Further, affiant sayeth naught.


_____
Mark W. Dobronski

Subscribed and sworn to before me
this  **23rd**  day of November, 2022.


_____

```
Anton Chernyak
Notary Public - State of Michigan
County of Washtenaw
My Commission Expires 2/28/2026
```

26